UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| BILLY WILLIAMS | CIVIL ACTION NO. 14-00043 |
| VERSUS | JUDGE ROBERT G. JAMES |
| TOWN OF DELHI, ET AL | MAG. JUDGE KAREN L. HAYES |

## RULING

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 based on claims of false arrest and excessive force asserted by Plaintiff Billy Ray Williams, Jr. ("Williams") against the Town of Delhi, Delhi Police Officer Tim Crum ("Officer Crum") in his individual and official capacities, and Delhi Chief of Police Steve Harrell ("Chief Harrell") in his official capacity. Plaintiff also asserts related state law claims.

Pending before the Court is Defendants' Motion for Summary Judgment [Doc. No. 20]. For the following reasons, the motion is GRANTED, and Williams' claims are DISMISSED WITH PREJUDICE.

**I.   FACTS AND PROCEDURAL HISTORY**

On September 15, 2013, Officer Crum received a cell phone call from Ryan Baker, an off-duty State Trooper ("Trooper Baker"), reporting that three African-American males had approached him in the parking lot of the M & M Package store in Delhi, Louisiana, and had attempted to sell him narcotics. [Doc. No. 20, Exh. A, Delhi Municipal Court Trial Transcript ("Trial Transcript"), p. 1]. Trooper Baker described the suspects and the car they were driving, a late model, maroon Ford Explorer. Officer Crum testified that, minutes after this call, a vehicle matching Trooper Baker's

description changed lanes in front of his police cruiser into oncoming traffic. [Doc. No. 20, Exh. A, Trial Transcript, p. 2]. Officer Crum activated his lights, the Explorer pulled over, and two passenger doors opened. *Id.* One of the passengers, later identified as Dalvin Polly, escaped on foot, but was captured by a Richland Parish Deputy Sheriff soon after. *Id.* Officer Crum rushed to the front of the Explorer, saw the other passenger, Williams, outside the vehicle and commanded him to stop. *Id.* Officer Crum claims that Williams fled. *Id.* He shot Williams with his Taser gun from approximately 20 feet away, and Williams fell, apparently smashing his face against the ground. *Id.*

After Williams was Tasered the first time, Officer Crum testified that Williams was holding his shirt in the front, which appeared to Officer Crum as though Williams was concealing a weapon or contraband under his shirt. *Id.* Officer Crum yelled at Williams to "stay down!" but Williams attempted to stand back up. *Id.* at p. 2. Officer Crum Tased Williams again. *Id.* Williams fell to the ground for the second time, but, according to Officer Crum, continued to resist arrest, holding his hands underneath his chest and preventing Officer Crum from handcuffing him. *Id.* Williams again attempted to stand up, and Officer Crum hit "him with another cycle" from the Taser. *Id.*

Soon after Williams was Tasered for the third time, Deputy Matthew Henderson of the Richland Parish Sheriff's Office ("Deputy Henderson") arrived and observed a "large amount of blood" on Williams' face and arms. [Doc. No. 28, Exh. P2, Deputy Henderson Complaint, p. 2]. Deputy Henderson handcuffed Williams' left wrist, but was unable to handcuff Williams' right wrist because Williams was holding it under his chest. *Id.* Officer Crum Tasered Williams for the fourth time. *Id.* Williams was finally restrained, and Deputy Henderson called an ambulance. *Id.* A mob of "irate citizens" gathered at the scene, yelling and screaming at the officers. *Id.* No weapon or contraband was found on Williams.

In contrast to Officer Crum's version of the events, Williams claims that he at no time resisted arrest or fled. [Doc. No. 20, Exh. A, Trial Transcript, p. 41]. Williams also testified that, after he was Tasered the fist time, he was knocked unconscious and remembers nothing until he woke up in the hospital. *Id.* at p. 41.

Crum's cruiser was not equipped with a camera. *Id.* at p. 5. However, it is undisputed that the arrest took place in Mrs. Mary Henson's front yard. *Id.* at 25. Mrs. Henson witnessed the majority of the incident, and her testimony echoes Officer Crum's and Deputy Henderson's version of the arrest. *See id.* at pp. 24-40. Specifically, Mrs. Henson testified that Officer Crum continually told Williams to "stay down" but that Williams repeatedly attempted to get up. *Id.* at p. 24.

After Williams was restrained, an ambulance arrived and Officer Crum accompanied Williams to the Richland Parish Medical Center in Rayville, Louisiana. Williams suffered multiple facial fractures, trauma to the chest, a bilateral pulmonary contusion, and lower neck injuries. [Doc. No. 28, Exh. P5, LSU Shreveport Medical Report, p. 3]. Because of the severity and extent of his injuries, Williams was transported to the LSU Medical Center in Shreveport, where he spent three days in the intensive care unit.

Following the incident, Officer Crum was placed on administrative leave with pay pending an investigation of the incident. On November 18, 2013, Officer Crum was re-instated, not as a patrolman, but as a dispatcher. [Doc. No. 28, Exh. P4, Minutes of Town of Delhi Board Meeting, ¶ 5]. Williams claims that there were eleven citizen complaints lodged against Officer Crum in the three years preceding this incident, but does not provide competent summary judgment evidence to this effect. [Doc. No. 27, Plaintiff's Undisputed Material Facts, ¶ 9]. Officer Crum resigned from the City of Delhi Police Department in January 2014. [Doc. No. 20, Exh. A, Trial Transcript, p. 21].

Williams was charged with and convicted of resisting arrest by flight in the Delhi Municipal Court on May 12, 2014. [Doc. No. 20, Exh. A, Trial Transcript, p. 47].

On January 9, 2014, Williams initiated this action. [Doc. No. 1]. On December 19, 2014, Defendants filed a Motion for Summary Judgment. [Doc. No. 20]. Plaintiff filed an opposition memorandum [Doc. No. 27], to which Defendants replied [Doc. No. 31].

**II.   LAW AND ANALYSIS**

    **A.   Standard of Review**

Under Federal Rule of Civil Procedure 56, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory

allegations, unsubstantiated assertions, or only a scintilla of evidence. Thus, Summary Judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)(citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248(1986)).

  **B.**   **§ 1983 Claims Against Officer Crum**

    **1.**   *Official Capacity Claims*

Williams sues Officer Crum "individually and in his capacity as a Police Officer of the Town of Delhi." [Doc. No. 1, Plaintiff's Complaint,¶ 1]. "State officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them." *Hafer v. Melo*, 502 U.S. 21, 27 (1991) (internal citations and quotations omitted). The real party in interest in an official-capacity suit is the governmental entity, not the named official. *Id.* at 25 (citing *Kentucky v. Graham*, 473 U.S 159, 166 (1985)); *see also Turner v. Houma Mun. Fire and Police Civil Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000) (holding that official-capacity suits are generally "another way of pleading an action against an entity of which an officer is an agent."). Here, Williams' claims against Officer Crum in his official capacity are duplicative of the claims against the Town of Delhi. In other words, Williams' allegations against Officer Crum in his official capacity are, in effect, claims against the Town of Delhi, the entity of which he is an agent. Consequently, Defendants' Motion for Summary Judgment on Williams' §1983 claims against Officer Crum in his official capacity is GRANTED and those claims are DISMISSED WITH PREJUDICE.

## 2. *Excessive Force Claim*

Williams alleges that Officer Crum exerted excessive force when arresting and handcuffing him. Because Williams has been convicted of resisting arrest, Defendants argue that *Heck v. Humphrey*, 512 U.S. 477 (1994), precludes Williams' excessive force claim, and, even if it does not, that they are shielded by qualified immunity. Consequently, the Court must resolve whether the allegations in Williams' Complaint are inherently inconsistent with his resisting arrest conviction.

On May 12, 2014, Williams was convicted of resisting an officer by flight under LA. REV. STAT. ANN. 14:108. It is well settled under *Heck* and its Fifth Circuit progeny that a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights unless: (1) the plaintiff demonstrates that the conviction or sentence has in some way been reversed or invalidated; or (2) can show that the alleged violation and the underlying conviction are separable and "conceptually distinct." *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008) (citing *Heck,* 512 U.S. at 486-87; *Ballard v. Burton*, 444 F.3d 391, 396 (5th Cir. 2006)).

Determination of whether the conviction and alleged violation are "conceptually distinct" is an "analytical and fact intensive" undertaking that requires the examining court "to focus on whether success on the excessive force claim requires negation of an element of the criminal offense." *Bush,* 513 F.3d at 497 (citing *Ballard*, 444 F.3d at 396). For example, the *Bush* court held that an excessive force claim was separable from the plaintiff's resisting arrest conviction because the facts of that case were such that the arrest could be separated into two distinct stages–the first stage consisting of the period when the plaintiff was unrestrained and resistant and the second stage occurring when the plaintiff was handcuffed and compliant. *Bush,* 513 F.3d at 499. Because the judge in the criminal proceeding did not clearly indicate that the conviction was predicated on the plaintiff's alleged

resistance in the second stage, the Fifth Circuit held that the plaintiff's excessive force claim in the second stage was separable and not barred by *Heck. Id.*

However, if a § 1983 excessive force plaintiff asserts absolute innocence in his complaint with regard to the entire arrest encounter, and not merely to a divisible portion of it, the Fifth Circuit holds that the excessive force claim is necessarily inconsistent and inseparable from a related conviction and therefore barred by *Heck.* Compare *DeLeon v. City of Corpus Christi*, 488 F.3d 649, 657 (5th Cir. 2007) (declining to consider the plaintiff's argument that his claims of excessive force were separable from his aggravated assault conviction because his complaint presented the excessive force claim as a single violent encounter throughout which the plaintiff was wholly innocent), and *Daigre v. City of Waveland, Miss.*, 549 F. App'x 283, 286 (5th Cir. 2013) (per curiam) (unpublished) (holding that *Heck* precluded plaintiff from proceeding on her excessive force claim solely on the basis that plaintiff alleged complete innocence in her complaint, which was necessarily inconsistent with the validity of her subsequent resisting arrest conviction), with *Bush,* 513 F.3d at 497 (noting that plaintiff's assertion in her complaint that she did not resist arrest, when read in the context of her entire complaint, could be interpreted as referring to a discrete portion of her arrest encounter, not necessarily to the entire arrest, and therefore not barred by *Heck*). The rationale undergirding *DeLeon* and *Daigre* is that "factual assertions in pleadings are . . . judicial admissions conclusively binding on the party that made them." *Diagre,* 549 F. App'x 283 at 286 (quoting *Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 108 (5th Cir. 1987) (alterations and citation omitted)).

Thus, to avoid dismissal under *Heck*, Williams must clear two hurdles. First, the allegations in his Complaint must not be inherently inconsistent with his resisting arrest conviction; in other words, he must not allege absolute innocence throughout the arrest encounter because such a position

would necessarily contravene his subsequent conviction. Second, only after overcoming the first hurdle, he must generate factual issues that: (1) his arrest occurred in divisible stages, and (2) Officer Crum exerted excessive force after he was restrained and compliant.

Williams cannot clear the first hurdle because the allegations in his Complaint contradict his conviction. His Complaint alleges simply that "he complied and obeyed *all* of the defendant, TIM CRUM's commands when he proceeded to physically assault him." [Doc. No. 1, Plaintiff's Complaint, ¶ 10] (emphasis added). This is the only reference to facts surrounding the arrest in Williams' Complaint. The statement is absolute and can be interpreted in only one way: Williams asserts complete innocence throughout the entire arrest episode, not merely in a discrete part of it. Thus, this scenario is analogous to *DeLeon* and *Daigre* and is distinguishable from *Bush*.

Williams argues against dismissal under *Heck* because his conviction is "currently on appeal to the 5th Judicial Court of Louisiana." [Doc. No. 28, p. 5]. This argument fails, however, because the *Heck* holding is clear that a plaintiff can proceed under § 1983 only if he can prove that his conviction has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck,* 512 U.S. at 487.

Considering these factors, Williams' excessive force claim is subject to dismissal under *Heck* because a favorable excessive force judgment "would necessarily imply the invalidity of his conviction." *Ballard*, 444 F.3d at 396. Accordingly, Defendants' Motion for Summary Judgment is GRANTED to the extent it seeks dismissal of Williams' excessive force claim. That claim is DISMISSED WITH PREJUDICE subject to Williams' right to assert it again if "the *Heck* conditions are met." *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996).

### 3.  *Unlawful Arrest Claim*

Williams alleges that he was stopped by Officer Crum "without probable cause," in violation of the Fourth Amendment. [Doc. No. 1, Plaintiff's Complaint,¶¶ 1 & 9]. Although it is unclear, Williams appears to assert a § 1983 unlawful arrest claim. Consequently, the Court must determine whether Officer Crum had probable cause to arrest Williams *before* he resisted arrest, or, even if Officer Crum did not, whether Officer Crum is shielded by qualified immunity.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV. Consistent with the rule at common law, "a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford,* 543 U.S. 146, 152 (2004) (citing *United States v. Watson,* 423 U.S. 411, 417–424 (1976)). "Probable cause exists where the facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Safford Unified Sch. Dist. No. 1 v. Redding,* 557 U.S. 364, 370 (2009) (internal citations and quotations omitted).

However, an investigatory stop need only be supported by "reasonable suspicion," not by probable cause. *United States v. Brown*, 558 F. App'x 386, 390 (5th Cir. 2014) (citing *Terry v. Ohio*, 392 U.S. 1, 37 (1968)). Reasonable suspicion, like probable cause, is determined by a "totality of the circumstances," which, in the context of a tip, is determined by a consideration of the informant's "veracity," "reliability," and "basis of knowledge." *Alabama v. White*, 496 U.S. 325, 328 (1990) (citing *Illinois v. Gates*, 462 U.S. 213 (1983)). If an investigatory stop goes beyond what is necessary

to determine whether the suspect is a threat, it is no longer valid and must be predicated on probable cause. *United States v. Zavala*, 541 F.3d 562, 576 (5th Cir. 2008) (citing *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993)).

Qualified immunity shields government officials from civil damages liability unless (1) the official violated a statutory or constitutional right that was (2) clearly established at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Once a defendant invokes qualified immunity, as Defendants have done here, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). The Supreme Court has explained that the clearly established standard incorporates an objective reasonableness inquiry. *Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1130 (5th Cir. 2014). The question of whether an official's conduct was objectively reasonable is a question of law, to be decided by the court. *Evett v. DETNTFF*, 330 F.3d 681, 687 (5th Cir. 2003) (internal citations omitted). If officers "of reasonable competence could disagree as to whether Plaintiff's rights were violated, the officer's qualified immunity remains intact." *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

With regard to § 1983 claims for unlawful arrest, an officer's conduct is objectively reasonable if a reasonable person in the officer's position could have believed he had probable cause to arrest. *Deville v. Marcantel*, 567 F.3d 156, 166 (5th Cir. 2009). On the other hand, it was clearly established at the time of Williams' arrest that an arrest unsupported by probable cause "is unlawful" and therefore objectively unreasonable. *See Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004).

Other than a conclusory allegation in his Complaint, Williams does not contest that Officer Crum had probable cause to initially stop the vehicle he rode in. A reliable source with firsthand knowledge, Trooper Baker, informed Officer Crum that three African-American males in a maroon Ford Explorer had attempted to sell him drugs. On these facts alone, assuming the initial traffic stop constituted an arrest rather than a mere investigatory stop, probable cause existed to arrest Williams. Even assuming, *arguendo*, that probable cause lacked, Officer Crum is entitled to qualified immunity because an objectively reasonable person in Officer Crum's position could have believed that there was probable cause for the initial stop.

Morever, if the Court were to construe Williams' Complaint to allege probable cause lacked to arrest him for resisting arrest, such a claim is precluded by *Heck*. Williams has already been convicted of resisting arrest and that conviction has not "been reversed on direct appeal, expunged by executive order, declared invalid . . . or called into question by a federal court's issuance of a writ of habeas corpus." *Heck,* 512 U.S. at 487. Accordingly, Defendants' Motion for Summary Judgment is GRANTED to the extent it seeks dismissal of Williams' unlawful arrest claim against Officer Crum in his individual capacity, and that claim is DISMISSED WITH PREJUDICE.

    C.    *§ 1983 Claims Against the Town of Delhi and Chief Harrell*

        1.    ***Excessive Force Claims***

Williams also asserts an excessive force claim against the Town of Delhi and Chief Harrell in his official capacity, alleging (1) the Town maintained a custom to "inadequately and improperly" investigate citizen complaints against its officers and (2) that its policy to inadequately train its officers resulted in the constitutional violation. [Doc. No. 1, Plaintiff's Complaint,¶ ¶ 18-20]. Williams' claims against Chief Harrell are actually claims against the Town of Delhi. *See Bellard*

*v. Gautreaux*, 675 F.3d 454, 462 (5th Cir. 2012) (claims asserted against sheriff in his official capacity are treated as claims against the entity he represents); *see also Brown v. Strain*, 663 F.3d 245, 251 (5th Cir. 2011) (same).

Vicarious liability does not apply to governmental entities for claims under § 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Rather, liability against a governmental entity under § 1983 requires proof of three elements: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Hous.*, 613 F.3d 536, 541–42 (5th Cir. 2010) (internal quotations and citations omitted). However, as already noted, *Heck* prohibits a plaintiff from alleging a constitutional violation under § 1983 if allowing that claim to proceed would undermine the validity of the plaintiff's conviction, unless the plaintiff demonstrates that the conviction has in some way been reversed or invalidated. *Bush*, 513 F.3d 492, 497.

For the same reasons set forth above in the ruling on Williams' § 1983 excessive force claim against Officer Crum in his individual capacity, Williams' excessive force claims against the Town of Delhi and Chief Harrell, which are predicated on *Monell* liability, require dismissal under *Heck*. Supervisory liability claims under *Monell* require an underlying constitutional violation and, where the underlying violation is barred by *Heck*, it cannot form the basis for a derivative *Monell* claim. *See Deleon*, 488 F.3d 649 (barring claims against individual officer and municipality pursuant to *Heck*); *Diagre,* 549 Fed. App'x at 287 (same); *Whatley v. Coffin*, 496 Fed. App'x. 414, 417 (5th Cir.2012) (per curiam) (unpublished) (same). Therefore, Defendants' Motion for Summary Judgment is

GRANTED to the extent it seeks dismissal of Williams' excessive force claims against the Town of Delhi and Chief Harrell, and these claims are DISMISSED WITH PREJUDICE.

### 2. *Unlawful Arrest Claims*

Williams apparently also asserts an unlawful arrest claim against the Town of Delhi and Chief Harrell in his official capacity, alleging that the vehicle in which he was traveling was stopped "without probable cause," that the "Delhi Police Department developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights" of individuals residing in Delhi, and that Chief Harrell was the "supervisor and commanding officer" of Officer Crum at the time of the incident. [Doc. No. 1, Plaintiff's Complaint, ¶¶9, 19, & 23].

As already stated, *Monell* liability can only be established against a municipality if the plaintiff can demonstrate an official policy or custom of which a policymaker can be charged with actual or constructive knowledge, and a constitutional violation whose "moving force" is that policy or custom. *Valle,* 613 F.3d at 541–42. In order to establish a constitutional violation for unlawful arrest, Williams must show that the initial traffic stop amounted to an arrest and that the arrest was not supported by probable cause.

Williams cannot establish *Monell* liability because he presents no evidence the Town of Delhi or Chief Harrell instituted a policy of unlawfully arresting individuals. Moreover, Williams cannot even demonstrate an underlying constitutional violation–for the same reasons set forth above in the ruling on Plaintiff's § 1983 unlawful arrest claim against Officer Crum, there was probable cause to arrest Williams. Defendants' Motion for Summary Judgment is accordingly GRANTED to the extent it seeks dismissal of Williams' unlawful arrest claims against the Town of Delhi and Chief Harrell, and these claims are DISMISSED WITH PREJUDICE.

### D. State Law Claims

Williams incorporates broad state law claims in his Complaint under LA. CIV. CODE ANN. "art. 2315, *et seq.*," but does not specify or brief exactly what claims to which he refers. When generously interpreted, the Complaint can be construed to assert state law claims for: (1) false arrest; (2) excessive force; (3) and state law vicarious liability claims against Chief Harrell. These claims are addressed in turn.

#### *1. False Arrest*

Under Louisiana law, the tort of false arrest occurs when one arrests and restrains another against his will and without statutory authority. *Henderson v. Bailey Bark Materials*, 47,946 (La. App. 2 Cir. 4/10/13); 116 So. 3d 30, 39. The claim requires proof of the following elements: (1) detention of the person; and (2) the unlawfulness of the detention. *Id.* (citing *Harris v. Eckerd Corp.*, 35,135 (La. App. 2 Cir. 9/26/01); 796 So. 2d 719, 722). Louisiana Code of Criminal Procedure article 213 provides that "a law enforcement officer may arrest a person without a warrant when that officer has reasonable cause to believe that the person to be arrested has committed an offense." *State v. Smith*, 42,089 (La. App. 2 Cir. 6/20/07); 960 So. 2d 369, 375. This requires that an officer have probable cause for the arrest. *See State v. James*, 42,976 (La. App. 2 Cir. 2/13/08); 975 So. 2d 801, 803. Moreover, "Louisiana applies qualified immunity principles to state constitutional law claims based on the same factors that compelled the United States Supreme Court to recognize a qualified good faith immunity for state officers under §1983." *Roberts v. City of Shreveport,* 397 F.3d 287, 296 (5th Cir. 2005) (internal citations and quotations omitted).

The Court has concluded that there was probable cause to initially arrest Williams, and the arrest was therefore lawful. Even if probable cause was lacking, the Court has found that Defendants

are entitled to qualified immunity because Officer Crum's actions were objectively reasonable. Thus, Defendants' Motion for Summary Judgment is GRANTED to the extent it seeks dismissal of Williams' state law claims against Defendants for unlawful arrest, and these claims are DISMISSED WITH PREJUDICE.

### 2. *Excessive Force*

Louisiana's excessive force tort mirrors its federal constitutional counterpart, *see Kyle v. City of New Orleans,* 353 So.2d 969, 972 (La. 1977), and the *Heck* principle applies with equal force to state law claims. *See Williams v. Harding*, 2012-1595 (La. App. 1 Cir. 4/26/13); 117 So. 3d 187, 191.

For the reasons set forth above in the ruling on Williams' § 1983 excessive force claims, Williams' state law excessive force claims are precluded by *Heck.* Defendants' Motion for Summary Judgment is therefore GRANTED to the extent it seeks dismissal of Williams' state law excessive force claims, and these claims are DISMISSED WITH PREJUDICE.

### 3. *Vicarious Liability*

Williams' Complaint appears to allege that Chief Harrell is vicariously liable under Louisiana law for Officer Crum's actions. Under LA. CIV. CODE ANN. art. 2320, "an employer is subject to vicarious liability for the tortious conduct of his employee, irrespective of his title, while acting within the course and scope of employment." *Brasseaux v. Town of Mamou*, 752 So.2d 815, 821 (La. 2000). Governmental entities "do not enjoy special protection from vicarious liability under Louisiana law and are subject to *respondeat superior* like every other employer." *Deville*, 567 F.3d at 173 (citing *Brasseaux*, 752 So.2d 815); *see also Bussey v. Dillard Dept. Stores, Inc.*, 984 So.2d 781, 784 (La. App. 1st Cir. 2008) ("[V]icarious liability [under article 2320] applies to law enforcement employers

as well.") (citations omitted). Again, however, the *Heck* principle also applies to state law claims. *Williams,* 117 So. 3d at 191.

Because there was probable cause to arrest Williams initially, Chief Harrell cannot be vicariously liable for any alleged unlawful arrest. Further, *Heck* precludes Williams' federal and state law excessive force claims. Therefore, Defendants' Motion for Summary Judgment is GRANTED to the extent it seeks dismissal of Williams' state law vicarious liability claims against Chief Harrell for unlawful arrest and excessive force, and these claims are DISMISSED WITH PREJUDICE..

### III. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment [Doc. No. 20] is GRANTED. Williams' claims are DISMISSED WITH PREJUDICE, subject to Williams' right to assert his excessive force claims again if the conditions set forth in *Heck v. Humphrey,* 512 U.S. 477 (1994) are met.

MONROE, LOUISIANA, this 27th day of February, 2015.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE